## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AMERICAN WESTERN** | : | |
| **HOME INSURANCE COMPANY,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| **DONNELLY DISTRIBUTION, INC.,** | : | **No. 14-797** |
| **Defendant.** | : | |

### <u>MEMORANDUM</u>

**Schiller, J.**                                                    **February 6, 2015**

Donnelly Distribution, Inc. ("Donnelly") was a defendant in a slip and fall case. Throughout that litigation, Donnelly was defended by its insurance company, American Western Home Insurance Company ("American Western"). The slip and fall case ultimately settled for $150,000, of which $125,000 was paid by American Western on behalf of Donnelly. American Western disputed that it owed its insured a defense or a duty to indemnify and sought a declaration in this Court to that effect. This Court disagreed with American Western, but was overruled by the Third Circuit Court of Appeals. Having emerged victorious on the question of its duty to defend and indemnify, American Western seeks reimbursement for the $125,000 that it paid on Donnelly's behalf to settle the underlying slip and fall case. Now before the Court are cross-motions for summary judgment. For the reasons that follow, the Court grants American Western's summary judgment motion and denies Donnelly's summary judgment motion.

## I.      BACKGROUND

In November of 2007, Sharon and Robert Swanlund sued Donnelly and Gold Electric, Inc.

in the Philadelphia County Court of Common Pleas, alleging that Sharon slipped and fell when her foot became entangled in the loop of a plastic tie used to wrap papers allegedly distributed or used by Donnelly. (Am. W. Home Ins. Co.'s Mot. for J. on the Pleadings, or in the Alternative, Mot. for Summ. J. [Am. W.'s Summ. J. Mot.] ¶ 5 & Swanlund Compl.] American Western issued a commercial insurance policy to Donnelly with effective dates of January 3, 2006 to January 3, 2007. (Am. W.'s Summ. J. Mot. ¶ 4.) The policy contained coverage limits of $1,000,000 per occurrence and $2,000,000 in the aggregate. (Donnelly Distribution Inc.'s Mot. for Summ. J. [Donnelly's Summ. J. Mot.] ¶ 5.) Donnelly tendered its defense to American Western under a reservation of rights. (Am. W.'s Summ. J. Mot. ¶ 6 & Reservation of Rights Letter & Disclaim of Coverage Letter.) American West appointed counsel for Donnelly. (Am. W.'s Summ. J. Mot. ¶ 6.) On February 23, 2009, the Swanlund litigation was stayed due to bankruptcy proceedings. (*Id*. ¶ 9.)

On March 1, 2011, American West filed a declaratory judgment action in this Court, claiming that it owed no duty to defend or indemnify Donnelly in the Swanlund matter. (*Id*. ¶ 11.) On March 3, 2011, the bankruptcy stay was lifted. (*Id*. ¶ 12.) On March 17, 2011, a revised case management order in the Swanlund litigation set a trial date of August 1, 2011. (*Id*. ¶ 13.) On August 2, 2011, this Court ruled that Donnelly was entitled to a defense and owed a duty of indemnification in the Swanlund litigation. (*Id*. ¶ 15.) Less than two weeks later, however, this Court vacated that order, and ordered additional briefing. (*Id*. ¶ 19.)

Shortly before trial, the Swanlunds executed a release settling their claims for $150,000. (*Id*. ¶ 21.) Of that amount, $125,000 was to be paid by American Western on behalf of Donnelly. (*Id*.) On September 15, 2011, this Court granted summary judgment in favor of Donnelly and ruled that American Western owed Donnelly a duty to defend and indemnify in the Swanlund action. (*Id*. ¶ 27.)

2

American Western appealed and the Third Circuit reversed the decision of this Court and concluded that no duty to defend or indemnify existed under the insurance policy. *Am. W. Home Ins. Co. v. Donnelly Distrib., Inc.*, 523 F. App'x 871 (3d Cir. 2013). On February 6, 2014, American Western filed this lawsuit against Donnelly seeking reimbursement for the $125,000 that American Western had paid to settle the Swanlund litigation. (Am. W. Summ. J. Mot. ¶ 1.)


## II.    STANDARD OF REVIEW

Summary judgment is appropriate when the admissible evidence fails to demonstrate a genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When the movant does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Thereafter, the nonmoving party demonstrates a genuine issue of material fact if it provides evidence sufficient to allow a reasonable finder of fact to find in its favor at trial. *Anderson*, 477 U.S. at 248. In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002). A court must apply the same standards to cross-motions for summary judgment. *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987); *see also St. Paul Fire & Marine Ins. Co. v. Primavera*

*Software, Inc.*, Civ. A. No. 09-3908, 2011 WL 3438077, at *3 (E.D. Pa. Aug. 5, 2011).


## III.    DISCUSSION

American Western claims that it is entitled to reimbursement from Donnelly based on an unjust enrichment theory. To support its position that an insurer can recover settlement proceeds from its insured, it relies on *Essex Insurance Co. v. RMJC, Inc.*, 306 F. App'x 749 (3d Cir. 2009) and *Axis Speciality Insurance Co. v. The Brickman Group, Ltd.*, 756 F. Supp. 2d 644 (E.D. Pa. 2010). Donnelly, on the other hand, claims that American Western voluntary paid the settlement and relies on *Axis* and *Utica Mutual Insurance Co. v. Rohm & Haas Co.*, 683 F. Supp. 2d 368 (E.D. Pa. 2010).

In *Essex*, the insured, RMJC, was found liable for injuries suffered by a patron at a nightclub. The district court concluded that Essex owed no duty to indemnify RMJC and ordered RMJC to reimburse Essex for the $410,315.15 judgment that Essex had paid. The Third Circuit affirmed the ruling that Essex was entitled to reimbursement. The court noted that Pennsylvania courts have endorsed the general doctrine prohibiting recovery for voluntary payments made due to a mistake of law. *Essex*, 306 F. App'x at 754. The court also noted the existence of cases forbidding an insurer from recovering the costs of defending a lawsuit against an insured and forbidding an insurer from recovering a settlement payment made by an insurer. *Id*. at 754-55.

However, the Third Circuit decided that "[n]otwithstanding this case law, we are confident the Pennsylvania Supreme Court would allow Essex to recover its indemnity payment." *Id*. at 755. The court held that the rule forbidding a party who made a payment operating under a mistake of law from recovering that payment did not apply to Essex because Essex was litigating its liability in

4

federal court and its liability was contingent on disputed factual issues. *Id*. ("Essex's uncertainty over how the court would resolve those key factual issues is a far cry from cases where plaintiffs made payments under mistakes of pure law."). The court also believed that allowing Essex to recover from RMJC would not upset the incentive structure that exists between insurers and their insured. *See id*. ("Essex's satisfaction of the state-court judgement protected the interests of all relevant parties."). Finally, the court noted that RMJC was on notice that Essex disputed its obligation to indemnify it. *Id*. at 756.

In *Axis*, the insured, the Brickman Group, had an umbrella policy with Axis. The Brickman Group was sued after a woman fell at a Home Depot, and the lawsuit implicated the Brickman Group's policy with Axis. Counsel for Axis negotiated a settlement to resolve the claims against the Brickman Group, but not Home Depot. The Brickman Group objected to a settlement that did not include Home Depot, but the lawyer for Axis made clear that he would settle the claim without Home Depot and despite any objection. Furthermore, the Brickman Group was self-insured for the first $250,000 of liability, but the issue of that self-insurance was not decided pursuant to the settlement. The lawyer for Axis subsequently sought $250,000 from the Brickman Group, but the Brickman Group disputed that it owed this amount, arguing that its payment of over $250,000 in defense costs satisfied its obligation.

The court held that Axis "cannot seek reimbursement of the $250,000 that it contributed to the settlement under the circumstances presented here." *Axis*, 756 F. Supp. 2d at 653. The court surveyed the legal landscape, including *Essex*, and concluded that Pennsylvania law permitted an insurer "who makes a settlement payment on its insured's behalf [to] assert an unjust enrichment claim for reimbursement if it is determined after the payment is made that the insurer was not

5

obligated to make the payment under the terms of the insurance policy." *Id*. at 655. To prevail on an unjust enrichment theory, the insurer must establish that: (1) it did not make the payment due to a mistake of law; (2) the insured was on notice at the time of payment that the obligation to pay was disputed; (3) the insurer did not make the payment primarily to protect its own interest; and (4) permitting reimbursement under the circumstances would not upset the delicate incentive structure inherent in the insurer/insured relationship. *Id*.

Applying these principles, the court concluded that Axis was not entitled to reimbursement. Prior to payment, Axis never informed the Brickman Group that it disputed its obligation to pay the first $250,000 of the settlement. *Id*. Thus, to the extent that Axis believed that the Brickman Group's payment of defense costs did not satisfy its obligations, Axis was operating under a mistake of law. *Id*. at 656. The court also believed that Axis settled for its own benefit—and well within policy limits—based on the fact that the Brickman Group was unhappy with the terms of the settlement because the settlement did not include Home Depot. *Id*. Axis settled over this objection, "essentially threatening to contribute nothing to the settlement if Brickman did not cooperate." *Id*.

*Utica* involved underlying lawsuits alleging exposure to asbestos and other toxic chemicals. Utica had agreed to pay a share of defense and indemnity costs on behalf of its insured, subject to a reservation of rights. The court concluded that with respect to both defense costs and settlement payments, the insured had not been unjustly enriched. *Utica*, 683 F. Supp. 2d at 375-76. "Utica obtained the right to control the course of the litigation of the Underlying Suits and affect their outcomes. This benefitted Utica . . . ." *Id*. at 375. The court distinguished *Essex*, a non-precedential opinion "of at most tightly circumscribed use," on the basis that *Essex* involved a case that went to final judgment following trial. *Id*. at 378. "In contrast to making defense or settlement payments,

when an insurer pays a final judgment following trial, there arguably is less of a one-sided benefit to the insurer because the insurer has defended throughout the litigation, presumably at great expense, and judgment forecloses the possibility that the outcome of the litigation was dictated by the insurer's presumed pursuit of its interests, rather than by the merits of the case." *Id*. at 378.

Applying these cases to the facts of this case, the Court concludes that American Western is entitled to reimbursement based on an unjust enrichment theory. As an initial matter, the Court agrees with Donnelly that the insurance policy does not explicitly allow for American Western to seek reimbursement for settlement costs. Indeed, American Western, which is proceeding on an unjust enrichment theory and not on a breach of contract theory, recognizes this reality. But that fact does not foreclose reimbursement. *See Essex*, 306 F. App'x at 754.

Donnelly quotes extensively from *Utica*, in which the court wisely noted differences between requiring reimbursement based on a verdict and requiring reimbursement based on a settlement. *See Utica*, 683 F. Supp. 2d at 376, 378. However, the law does not forbid reimbursement because a settlement, rather than a final judgment, is involved. Moreover, *Axis*, a case partially relied upon by Donnelly, recognized the possibility of reimbursement for an insurer under the proper circumstances. *Axis*, 756 F. Supp. 2d at 655. Thus, while the procedural posture of the underlying litigation is an important piece of the right-to-reimbursement analysis, the fact that the insurer is seeking reimbursement of settlement proceeds does not foreclose reimbursement.

Looking to the considerations outlined in *Axis*, reimbursement is warranted here. American Western did not make the payment under a mistake of law. American Western has consistently disputed its obligation to pay under the insurance policy through a reservation of rights letter and a letter disclaiming coverage. Additionally, American Western clearly communicated to Donnelly its

7

dispute over its obligation, although the parties dispute the role that Donnelly played in negotiating the settlement. Donnelly claims that it played no role in the settlement process and that it did not approve the settlement. (Donnelly's Mot. for Summ. J. ¶¶ 15-18.) American Western claims that its lawyers were not permitted to participate in settlement negotiations and document preparation of the final settlement. (Am. W.'s Mot. for Summ. J. ¶¶ 16-17.) The Court need not resolve this dispute over the settlement for which nobody seems to want to take credit. There is no dispute that Donnelly was aware of the settlement and there is no evidence that Donnelly voiced any objection to the settlement. These considerations distinguish this matter from *Axis*, a case in which the insured raised serious objections to the settlement.

While the settlement payment certainly benefitted American Western, the Court concludes that it greatly benefitted Donnelly as well. This case was settled well within policy limits. Thus, the Court thinks it unlikely that Donnelly faced a situation in which it would be hit with an excess verdict. However, the settlement guaranteed a fixed settlement amount and capped costs, whereas a trial could have led to a verdict greater than the settlement in a case in which it was ultimately decided that American Western owed no duty to indemnify Donnelly.

Applying the final *Axis* consideration, the Court does not see how the delicate balance of interests between insured and insurer would be upset by ordering reimbursement here. The decision to settle was reasonable. Although the original order granting summary judgment to Donnelly was vacated, this Court had previously ruled—prior to settlement of the Swanlund litigation—that American Western owed Donnelly a duty to defend and indemnify. Though American Western disputed that decision and was ultimately correct in its interpretation of the insurance policy, American Western could hardly be faulted for settling given this Court's ruling, a ruling which this

8

Court again reached at the summary judgment stage.

The Swanlunds' interests were protected, as were the interests of American Western and Donnelly, because the underlying litigation was settled well within policy limits. Although it is possible that this decision obligates Donnelly to pay money that it never would have been required to pay had a trial ended in Donnelly's favor, it is equally plausible that the settlement saved defense costs and greater costs through a higher verdict against it. Given the Third Circuit's clear statement that no duty to defend or indemnify existed in this case, Donnelly could have been liable for significantly more than the terms of the settlement.

One final item convinces the Court that reimbursement is appropriate here. When the Third Circuit overruled this Court's decision and held that American Western owed no duty to defend or indemnify Donnelly in the Swanlund litigation, the court specifically referred to the "duty to indemnify Donnelly for any amount due pursuant to the settlement of the Underlying Action." *Am. W. Home Ins. Co. v. Donnelly Distrib., Inc.*, 523 F. App'x 871, 875 (3d Cir. 2013). The Third Circuit was aware that a settlement had been reached in the Swanlund litigation. It therefore seems unlikely that American Western would have no duty to indemnify but would be barred from receiving reimbursement once its duties and obligations were litigated in this forum. If such a distinction existed, it would provide an incentive for the insurer to not settle, hoping that it owed no duty to indemnify, or stall on litigating and paying a settlement, hoping that its duties would be clarified before it made any payments. This Court does not wish to encourage either of those responses.

## IV.    CONCLUSION

This Court's ruling that American Western is entitled to reimbursement is a narrow one based

on the uncontested facts presented here. Applying those facts to the ruling in *Essex*, the differences between this case and *Axis*, and the Third Circuit's prior ruling in this case, the Court concludes that reimbursement is warranted. Accordingly, the Court grants summary judgment in favor of American Western and holds that it is entitled to reimbursement of the $125,000 settlement that it paid on behalf of Donnelly in the Swanlund litigation. An Order consistent with this Memorandum will be docketed separately.